UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22 CR 380 RLW ) |
| ASMIR JASAREVIC, | ) ) |
| Defendant. | ) ) ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Asmir Jasarevic, represented by defense counsel Eric Selig, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count 1 of the Indictment, the government agrees that no further federal prosecution will be brought in this District relative to the defendant's conspiracy to transport and sell stolen goods, specifically catalytic converters, from June 9, 2021 through January 10, 2022, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

## 3. ELEMENTS:

The defendant admits to knowingly violating Title 18, United States Code, Section 371 (Title 18, United States Code, Section 2315), and admits there is a factual basis for the plea and further fully understands that the elements of the crimes are:

### COUNT 1
### (Conspiracy to Transport and Sell Stolen Goods)

*One*, between June 9, 2021 and January 10, 2022, the defendant reached an agreement with at least one other person to traffic in stolen catalytic converters;

*Two*, the defendant voluntarily and intentionally joined the agreement;

*Three*, at the time defendant joined in the agreement, he knew its purpose; and

*Four*, while the agreement was in effect, defendant knowingly committed an overt act in furtherance of the agreement.

4. <u>FACTS</u>:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On June 9, 2021, defendant posted a Facebook solicitation, falsely claiming to be a state licensed dealer, to purchase catalytic converters. Defendant had no place of business and operated from his apartment, located in the City of St. Louis. He conducted transactions at his apartment or in public places such as parking lots or gas stations. Defendant kept no records of his transactions as required by Missouri State law. He issued no receipts to his customers, paid only in cash, and paid well below true market value.

Many individuals responded to defendant's post and subsequent postings. After purchasing catalytic converters from these individuals defendant would transport them to Apex Recycling (Apex) in Fairmont City, Illinois, where he sold them for a profit. Apex is a commercial/residential recycling company that requires identification for sellers of catalytic converters.

Undoubtedly a portion of the catalytic converters purchased by defendant were not stolen and constituted legitimate sales. However, a significant number of transactions were conducted by defendant under circumstances in which defendant had direct knowledge that the catalytic converters were stolen.

An example of defendant conducting transactions knowing the catalytic converter was stolen property involved an individual using the name "Heather" who was cooperating with law enforcement. Defendant bought a catalytic converter from "Heather" on December 29, 2021. In text messages related to a further purchase, defendant advised "Heather" that he didn't want his

3

neighbors to report him to the police and he needed to make his transaction with her "look legit." On January 10, 2020, "Heather" texted defendant to arrange a purchase of a catalytic converter advising "I literally just took it from an auto body shop and I don't want to have it [ ] my vehicle." Defendant bought this catalytic converter from "Heather" despite this provenance and bought again from "Heather" on January 13, 2022.

Circumstances surrounding other transactions infer defendant's knowledge or at the least demonstrate he should have reasonably known he was trafficking in stolen property. By his own admission, he was involved in the business for years and knew of the nationwide problem of dramatically increasing thefts of catalytic converters. Defendant often conducted purchases at night, during non-business hours, and when meeting sellers at his apartment would direct them to shut their vehicle lights off to avoid detection as he did on November 24, 2021 when buying from "Brannon," on December 9, 2021 when buying from "A.J.G.," and on January 1, 2022 when buying from "Luke." Defendant also conducted multiple transactions with individuals who obviously didn't have the resources to own multiple vehicles and made purchases from individuals on successive days, both strong indicators that the catalytic converters were stolen.

While defendant sold just under $50,000 worth of catalytic converters to Apex from July 2021 through January 10, 2022 (the date of his arrest) the parties agree that $20,000 of that was derived from stolen property.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty for Count 1 is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2022 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 6, as found in Section 2B1.1(a)(2).

**(2) Specific Offense Characteristics:** The parties agree that 4 levels should be added pursuant to Section 2B1.1(b)(1)(C) as the loss exceeded $15,000 but was less than $40,000. Two levels should be added as the offense involved 10 or more victims, pursuant to Section 2B1.1(b)(2); 2 levels should be added as defendant was in the business of receiving and selling stolen property, pursuant to Section 2B1.1(b)(4); and 2 levels should be added as the offense involved an organized scheme to steal vehicle parts, pursuant to Section 2B1.1(b)(15).

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. Further, the Government, under the facts known at present, will make a motion at the time of sentencing for an extra 1 level reduction based on the defendant's timely notification of his intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the

5

government may decide not to file a motion for the extra 1 level reduction and may present evidence to the court, and argue that the defendant should not receive all or part of the 2 level deduction pursuant to Section 3E1.1(a), without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 13.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

(2) **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

b. **Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 9/5/23<br>Date | _____<br>JOHN J. WARE<br>Assistant United States Attorney |
| 8/28/23<br>Date | _____<br>ASMIR JASAREVIC<br>Defendant |
| 8/28/23<br>Date | _____<br>ERIC SELIG<br>Attorney for Defendant |

11